Rafi Hasbani, Esq.
**HASBANI & LIGHT, P.C.**
450 Seventh Avenue, Suite 1408
New York, New York 10123
Tel: (212) 643-6677

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**COMPLAINT**

---

WINDWARD BORA, LLC,

                           Plaintiff,

-against-

EZRA SHAMI; RACHEL SHAMI; RACHEL WEISS;
NEW YORK CITY DEPARTMENT OF
TRANSPORTATION PARKING VIOLATIONS BUREAU;
"JOHN DOE" and "JANE DOE," said names being fictitious,
it being the intention of Plaintiff to designate any and
all occupants, tenants, persons, or corporations, if any,
having or claiming an interest in or lien upon the premises
being foreclosed herein,

                           Defendants.

---

Plaintiff, by its attorneys Hasbani & Light, P.C., hereby alleges upon information and belief:

## NATURE OF THE ACTION

1.       This is an action brought pursuant to New York Real Property Actions and Proceedings Law, Section 1301 *et seq.*, to foreclose on a mortgage encumbering the property commonly known as 2083 E 1st Street, Brooklyn, NY 11223, known on the Kings County Tax Map as Block: 7104 Lot: 511 in the County of Kings, and State of New York (the "Property").

## PARTIES

2.       Windward Bora LLC is a limited liability company organized under the laws of the State of Delaware.

3.       Windward Bora LLC is a single-member limited liability company, whose sole member, Yonel Devico is a resident of the State of Florida. For the purposes of diversity,

Windward Bora LLC is a citizen Florida.

4.      Ezra Shami, upon information and belief, is a resident and citizen of the State of New York, having an address at 2083 E 1st Street Brooklyn, NY 11223. Ezra Shami is a necessary party defendant to this action by virtue of the fact that he is a party to the mortgage.

5.      Rachel Shami, upon information and belief, is a resident and citizen of the State of New York, having an address at 2083 E 1st Street Brooklyn, NY 11223. Rachel Shami is a necessary party defendant to this action by virtue of the fact that she is a party to the mortgage.

6.      Rachel Weiss, upon information and belief, is a resident and citizen of the State of New York, having an address at 32 Mariner Way, Monsey, NY 10952. Rachel Weiss is a necessary party defendant to this action by virtue of the fact that she is an owner of record of the subject property.

7.      New York City Department of Transportation Parking Violations Bureau is a judgment creditor located at 100 Church Street, New York, NY 10007. For purposes of diversity jurisdiction, New York City Department of Transportation Parking Violations Bureau is a citizen of New York. New York City Department of Transportation Parking Violations Bureau is a necessary party defendant in this action because it is a judgment creditor by virtue of the judgment docketed against the Borrower and/or Property which is subordinate to Plaintiff's Mortgage. Attached as **Exhibit A** is a true and correct copy of the judgment.

8.      Defendants "JOHN DOE" and "JANE DOE" are additional parties being the tenants, occupants, persons, or corporation, if any, having or claiming an interest in or lien upon the Subject Property. *See* NYRPAPL §§ 1311, 1312 and 1313.

9.      Each of the above-named defendant(s) has or claimed to have or may claim to have some interest in or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to, the lien of said Mortgage.

## JURISDICTION AND VENUE

10.     This Action is between citizens of different states. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Therefore, jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332.

11.     Venue is deemed proper in this District pursuant to 28 U.S.C. §1391. A substantial part of the events giving rise to this action took place within the jurisdiction of this court and the Property is located in this district.

## AS AND FOR A FIRST CAUSE OF ACTION

12.     On or about January 3, 2007 defendant EZRA SHAMI executed a home equity line of credit in the amount of $350,000 from National City Bank by a certain note dated the same date (the "Note"). Attached as **Exhibit B** is a true and correct copy of the endorsed Note.

13.     In order to collaterally secure the aforesaid obligation, defendants EZRA SHAMI and RACHEL SHAMI, on the same day, duly executed, acknowledged and delivered to Plaintiff's assignor a mortgage (the "Mortgage"). Attached as **Exhibit C** is a true and correct copy of the Mortgage. Said mortgage was recorded in the City Register of the County of Kings on January 25, 2007 as CRFN: 2007000048035. The Mortgage encumbers the Property. *See* **Exhibit C**. Pursuant to the Mortgage, in any lawsuit for foreclosure and sale, lender has the right to collect all costs and disbursements and additional allowances allowed by the applicable law and will have the right to add all reasonable attorneys' fees to the amount borrower owes lender which fees shall become part of the Sums Secured. *See id.*

14.     The Mortgage was assigned to US Mortgage Resolution LLC by the assignment of mortgage dated April 2, 2015. Attached hereto as **Exhibit D** are true and correct copies of the assignments of mortgage. Said assignment of mortgage was recorded in the City Register of the County of Kings on October 23, 2017 as CRFN: 2017000388397.

3

15.     The Mortgage was subsequently assigned to RCS Recovery Services, LLC by the assignment of mortgage dated August 18, 2015. See **Exhibit D**. Said assignment of mortgage was recorded in the City Register of the County of Kings on October 23, 2017 as CRFN: 2017000388398.

16.     The Mortgage was subsequently assigned to 20 Cap Fund I LLC by the assignment of mortgage dated September 22, 2015. See **Exhibit D**. Said assignment of mortgage was recorded in the City Register of the County of Kings on October 23, 2017 as CRFN: 2017000388399.

17.     The Mortgage was subsequently assigned to Miss Jones LLC by the assignment of mortgage dated July 25, 2017. See **Exhibit D**. Said assignment of mortgage was recorded in the City Register of the County of Kings on October 23, 2017 as CRFN: 2017000388400.

18.     The Mortgage was subsequently assigned to Plaintiff by the assignment of mortgage dated November 7, 2019. See **Exhibit D**. Said assignment of mortgage was recorded in the City Register of the County of Kings on December 3, 2019 as CRFN: 2019000394328.

19.     EZRA SHAMI defaulted under the Note for $350,000.00 owing to Plaintiff and no payment thereof has been made to Plaintiff from EZRA SHAMI despite demand, by having failed to make monthly payments on April 1, 2014 to date.

20.     Plaintiff is the owner of the Note and is in possession of the wet-ink note with a proper allonge. Said Note and Mortgage were also assigned to Plaintiff by a written assignment of mortgage. Therefore, Plaintiff is the holder and owner of both the Note and Mortgage on the date of the filing of this this complaint. *See* **Exhibits B, C**, and **D**.

21.     Defendant RACHEL WEISS owns the equity of redemption herein foreclosure and is joined as necessary defendant to the foreclosure all right, title, interest and equity of redemption in the Property.

22.     Plaintiff verily believes that during the pendency of this action, it may be compelled

to make advances to prior mortgages, if any, for installments of principal and interest, taxes, assessments, water rates, and/or fire insurance premiums that are or may become due under said prior mortgage or to the receiver of taxes, or the fire insurance company, which advances are to be included in the balance due to Plaintiff, plus interest, as provided for in the Mortgage foreclosed and deemed further secured thereby.

23.     Plaintiff has complied with section 1306 of the Real Property Actions and Proceedings Law, and the Mortgage was originated in compliance with all provisions of section 595-a of the Banking Law and any rules or regulations promulgated there under, and, if applicable, sections 6-1 or 6-m of the Banking law.

24.     That no other action is pending for the recovery or said sum secured by the Note and Mortgage.

25.     That Plaintiff shall not be deemed to have waived, altered, released or changed the election made by reason of any payment after the date of commencement of this action.

## AND AS FOR A SECOND CAUSE OF ACTION

26.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs "1" through "25" of the Complaint with the same force and effect as if more specifically set forth herein.

27.     Pursuant to the Mortgage, at the mortgagee's options, it may require all sums due under the Note and Mortgage "upon the creation, or contract for the creation of, a transfer or sale of all or any party of the Property." See **Exhibit C** ¶ 6.

28.     By a deed dated November 17, 2008, defendants EZRA SHAMI and RACHEL SHAMI transferred the Property to defendant RACHEL WEISS. Attached hereto as **Exhibit E** is a true and

accurate copy of the deed. Said deed was recorded in the Office of the City Register, County of Kings on December 18, 2008 as CRFN: 2008000480603. See **Exhibit E**.

29.     As a result, Defendants EZRA SHAMI and RACHEL SHAMI have breached the Mortgage by violating the due on sale clause. See **Exhibit C** ⁋ 6.

30.     That Plaintiff shall not be deemed to have waived, altered, released or changed the election made by reason of any payment after the date of commencement of this action.

 

**WHEREFORE**, the Plaintiff demands judgment that the defendants herein and all persons claiming under them or any or either of them subsequent to the commencement of this action may be forever barred and foreclosed of all right, claim, lien and equity of redemption in the said Property; that the said premises may be decreed to be sold according to law in "as is" physical order and condition, subject to any covenants, easements, restrictions and reservations of record; any violations of record; any state of facts an accurate survey may show; any zoning regulations or amendments thereto; rights of tenants or persons in possession of the subject premises; any prior mortgage liens of record; any prior lien of record; and any advances or arrears hereunder; that this Court forthwith appoint a receiver of the rents and profits of said premises, during the pendency of this action with the usual powers and duties; that monies arising from the sale may be brought into court; that plaintiff may be paid the amount due on said note and mortgage with interest to the time of such payment, attorney's fees, as set forth in the mortgage, the costs of this action and the expenses of said sale so far as the amount of such monies properly applicable thereto will pay the same; and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property

and Proceedings Law.

Dated: August 12, 2020
      New York, New York

                  BY:    */s/ Rafi Hasbani*
                        Rafi Hasbani, Esq.
                        *Attorneys for Windward Bora, LLC*
                        450 Seventh Avenue, Suite 1408
                        New York, New York 10123
                        rhasbani@hasbanilight.com
                        Tel: (212) 643-6677

# SIGNATURE TITLE AGENCY & LAND SERVICES

CTSY- 2083 East 1st Street

## SCHEDULE A

### PROPERTY DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of East 1st Street, distant 153 feet 3 inches northerly from the corner formed by the intersection of the easterly side of East 1st Street and the northerly side of Avenue U;

RUNNING THENCE easterly parallel with Avenue U and part of the distance through a party wall, 100 feet:

THENCE northerly parallel with East 1st Street, 23 feet;

THENCE westerly parallel with Avenue U, 100 feet to the easterly side of East 1st Street; and

THENCE southerly along the easterly side of East 1st Street, 23 feet to the point or place of BEGINNING.

Case 2:20-cv-06666-FB-RER Document 41-1 Filed 08/22/20 Page 1 of 50 PageID #: 983

## WTA-16-030444AB

```
500    BT CNTY BLVD PO BOX 9030
FARMINGDALE  NY      11735-9030

Amount: $4,043.91
----------------------------------------------------------------
Block:      Lot:                        Control No. 002999143-01
Book Type -- Judgments Docket           Index # E0272676620003
Judgment Type: NY STATE TAX WARRANT     Effective Date: 03/24/2012
Court:                                  Expiration Date: 03/26/2032
Satisfaction: Vacate-08/07/2012
                                        Docket Date:03/27/2012
                                        Date Received:08/08/2012

Debtor Info:
WEISS, RACHEL B
289    HOYT ST
BROOKLYN          NY 11231-4907

Creditor Info:
NY STATE DEP'T OF TAXATION AND FINANCE


Amount: $26,473.42
----------------------------------------------------------------
END RETURNS
****************************************************************

PVB - (Parking Violations Bureau - Ending Date 10/28/16)

Search Parameters- Last:Weiss    First:Rach

END RETURNS
****************************************************************

(Environmental Control Board (Fire and Building) - Ending Date 09/30/16)

Search Parameters- Last:Weiss    First:Rach

RACHEL WEISS
535 KENT AVENUE
BKLYN, NY 11249
ECB Violation No.: 35155012L     Date-08/16

Amt: $400.00
----------------------------------------------------------------
END RETURNS
****************************************************************

Uniform Commercial Code from ( 10/01/1988 - 11/18/16 )

Kings County
Search Parameters- Last:Weiss    First:Rach

Document ID- 2011020301223001    CRFN- 2011000053612
Instrument- INITIAL COOP UCC1
Filed- 02/14/2011    Collateral- N/A
File No-

DEBTOR Info:
WEISS, JED
201 WEST 74TH STREET, APT. 9B

NEW YORK              NY 10023-

WEISS, RACHEL
201 WEST 74TH STREET, APT. 9B

NEW YORK              NY 10023-

SECURED PARTY Info:
BANK OF AMERICA, N.A.
4500 PARK GRANADA BLVD.

CALABASAS             CA 91302-

----------------------------------------------------------------
END RETURNS
```

**National City**

**EQUITY RESERVE℠ AGREEMENT – NATIONAL HOME EQUITY**
(Not to be Used for Lines Secured by a Texas Homestead)

Date: 1/03/2007    Account No.    0005324352

You, the undersigned, are opening an Equity Reserve Line of Credit (Line) with National City Bank (Bank) and agree that the following material terms and conditions will apply to your Line.

**Line of Credit.** Your Line is an open-end line of credit which you may use to obtain cash advances (Advances) from time to time for a period of 10 years (9 years 10 months in Connecticut) (Draw Period). If you continue to meet Bank's then current credit and collateral value criteria, at Bank's discretion, Bank will either extend the Draw Period for one or more additional Draw Periods or Bank may refinance your Line on the terms then being offered by Bank for Equity Reserve Lines of Credit. If your Draw Period is not renewed or the Line refinanced, you may repay any outstanding balances during the Repayment Period as provided in the Payment section below.

The initial amount of your Line is $    350,000.00    (Credit Line). You have the option anytime during the Draw Period of this Agreement to create Fixed Rate Locks of all or part of your Line at a fixed rate and for a fixed payment. The Fixed Rate Lock (FRL) balance includes the FRL advance fee. Any amount you repay on the Line and/or on an FRL will be again available to you on the Line until the end of the Draw Period. Bank may reduce the amount of your Credit Line under certain conditions described in this Agreement.

**Advances.** You may obtain Advances under your Line by issuing Equity Reserve checks and special FRL checks (each a Check) supplied by Bank, by contacting Customer Service or by way of any other Bank approved plan. Bank will charge your Checks directly against your Line. You may make arrangements for an Advance on your Line to pay off any FRL at any time by contacting Customer Service at the address or phone number on your statement. You should notify Bank when you need more Checks. The minimum FRL Advance that you can receive using an FRL Check is $5,000. FRL Check Advances will automatically have a 20-year Repayment Term. You may contact Customer Service after a FRL Check posts to your Line to change the Repayment Term to one of the other available terms listed in the Fixed Rate Lock Advances section below, however, FRL Advances changed to another Repayment Term will be subject to finance charges at the annual percentage rate in effect the day the new FRL Repayment Term is applied by Customer Service. FRL Advances for terms other than 20 years may also be obtained by contacting Customer Service instead of by Check. FRL Checks for less than $5,000 will be posted as a Line Advance. You should also notify Bank immediately if your Checks are lost or stolen. (Please see the "Stop Payment Orders" section of this Agreement.) Your statement will list Checks that have been paid, but the actual paid Checks will not be returned to you. You may request copies of paid Checks from the Bank, and a copying fee may be charged.

Bank will issue you a Card or Cards for use with the Line except in Connecticut, New York and Texas and in other states where such access is limited. The word Card can mean one or more credit cards or Automated Teller Machine (ATM) cards. You authorize Bank to issue you a Card for use with the Line. You may purchase goods or services from merchants who honor the Card. You may obtain Advances from Bank or any other financial institution that honors the Card. You may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances. Bank will charge all Advances to your Line.

If you allow someone else to use your Card or PIN and you want to stop such use, you must let Bank know in writing. You must notify Bank immediately if your Cards or PIN are lost or stolen, or you believe that some person may be using your Card(s) or PIN without permission. You will not use your Line after notifying Bank of loss, theft or unauthorized use of your Card(s) or PIN. You will not be held liable for any unauthorized use of the Card or PIN after you have notified Bank of the loss or theft by phone at 1-800-533-6596 or in writing at National City Card Services, P.O. Box 4092, Kalamazoo, Michigan 49003. (Otherwise you may be liable, but not for more than $50.) Bank may terminate the use of your Card, PIN or Checks if you lose your Card, PIN or Checks two times or more in a twelve-month period. Bank may also terminate the use of your Card or PIN if your new balance exceeds your Credit Line by 2% or if you are over limit for more than one billing cycle.

Bank will have no obligation to honor any Advance by any means if the resulting new balance of your Line would exceed your Credit Line; or after the Draw Period ends; or in the event of termination or suspension of your Credit Line under the conditions described in this Agreement, and upon Bank's request you will return Checks and/or Cards. Your Line may not be used for Internet lottery, betting or gambling transactions or for any illegal transactions.

Charges from foreign merchants and financial institutions may be made in a foreign currency. Bank will bill you in U.S. Dollars based on the exchange rate on the day Bank settles the transaction, plus any special currency exchange charges. In the case of VISA Accounts: the exchange rate applied to each such transaction is either a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. In addition, Bank will charge a foreign transaction fee of 1% of the converted amount. Because of the special charges and possible differences in exchange rates between the time Bank settles and the time you initiated the transaction, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made.

**Finance Charge for Line and Fixed Rate Lock Advances and During the Repayment Period.**

   a) **Line Advances:** Bank figures the finance charge on your Line by applying the periodic rate to the "average daily balance" of your Line. To get the "average daily balance", Bank takes the beginning balance of the Line each day, adds any new Advances including if applicable, the broker and processing fees, and other debits, and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance".

Advances are subject to finance charges from the date of transaction to the date payment is posted to the Line. The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index. The index in effect for each billing cycle shall be the "Prime Rate" of interest appearing in the Money Rates Table of The Wall Street Journal published on the first day of your Billing Cycle (or, if not published on that date, the last edition published prior to that date), rounded upward, if necessary, to the nearest .01% (Line Index).

The **ANNUAL PERCENTAGE RATE** is the Line Index plus   0.750   %(Line Margin). The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of   12/29/2006   , the current periodic rate of **FINANCE CHARGE** is    0.750   % per month, which corresponds to an **ANNUAL PERCENTAGE RATE** of 9.000%.

The annual percentage rate and the periodic rate of finance charge may increase if the Line Index increases. In the event of an increase, the finance charge will increase and the minimum payment amount may increase. If the minimum payment amount is either 1.5% of the new balance or the total finance charges, an increase or decrease in the annual percentage rate will result in a corresponding increase or decrease in the minimum payment amount.

   b) **Fixed Rate Lock Advances:** Bank figures the finance charge on each FRL by applying the periodic rate to the "average daily balance" of the FRL. To get the "average daily balance", Bank takes the beginning balance of the FRL each day and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance".

Each FRL is subject to finance charges from the date of the transaction until paid in full. The periodic rate of finance charge and the annual percentage rate are determined and fixed on the business day the transaction posts to your Line. The index shall be the highest daily rate for 3 year Treasury notes with constant maturities from the 1st business day through the 11th last business day of the calendar month preceding the month in which the transaction posts to your Line, rounded, if necessary, to the nearest 0.125% (FRL Index). The FRL Index can be found in the Federal Reserve Statistical Release H. 15 at www.federalreserve.gov/releases/h15.

NHEERA1 (06/13/2005)

ERA-MULT-NHV2_1

The **ANNUAL PERCENTAGE RATE** is the FRL Index plus a margin (FRL Margin). The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of **01/03/2007**, the FRL Margin, the current periodic rate of **FINANCE CHARGE** per month and corresponding **ANNUAL PERCENTAGE RATE** for each FRL Repayment Term are listed in the table below:

| FRL Repayment Term | FRL Margin | Monthly Periodic Rate of FINANCE CHARGE | ANNUAL PERCENTAGE RATE |
|---|---|---|---|
| 5-year FRL: 60 monthly payments | 3.500 | 0.677 | 8.125 |
| 10-year FRL: 120 monthly payments | 3.750 | 0.698 | 8.375 |
| 15-year FRL: 180 monthly payments | 4.000 | 0.719 | 8.625 |
| 20-year FRL: 240 monthly payments (automatic term for FRL checks you write) | 4.500 | 0.760 | 9.125 |
| 7-year "Interest Only" FRL: 83 monthly payments of one penny plus finance charges on the FRL balance (including the FRL Advance Fee), followed by a balloon payment of the remaining balance in the 84th month. | 3.750 | 0.698 | 8.375 |

**c) Both Line and Fixed Rate Lock Advances:** In no event shall the periodic rate of **FINANCE CHARGE** be more than 1.50% per month or less than 0.25% per month and in no event shall the **ANNUAL PERCENTAGE RATE** be more than 18.00% or less than 3.00%. The annual percentage rate includes only interest and not other costs. Your monthly statement will disclose the applicable annual percentage rate for the billing cycle.

**d) Repayment Period:** Any amount outstanding other than FRL's will be converted to a Fixed Rate Lock balance on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Lock based on a 240 month Repayment Term for balances of $10,000 or more or a 120 month Repayment Term for balances of less than $10,000 as stated in subsections (b) and (c) above. The index value is the highest FRL Index from the 1st business day through the 11th last business day of the calendar month preceding the month in which the Draw Period ends, rounded, if necessary, as provided in subsection (b) above.

Other Finance Charges.     A Broker fee **FINANCE CHARGE** of $     **3,500.00**
A Discount Fee **FINANCE CHARGE** of $     **0.00**     (0.000 % of Credit Line)
A Processing Fee **FINANCE CHARGE** of $     **0.00**
An FRL Advance Fee **FINANCE CHARGE** of $50 for each Fixed Rate Lock used.

**Other Charges.** In addition to finance charges, the following other charges will apply:

- An annual fee of $50 reflected on the monthly statement for the first billing cycle of each year of your Draw Period beginning with the 13th billing cycle, whether or not you obtain Advances under your Line. This fee is not refundable.
- A late payment fee of the greater of 10% of the unpaid minimum payment or $40, if Bank does not receive your minimum payment at the address shown on your statement within 10 days of the Due Date. Bank may charge an additional late payment fee for each billing cycle that your Line is past due.
- An overlimit fee of $25 whenever you go over your Credit Line. Bank may charge an additional $25 for each billing cycle that you remain over your Credit Line.
- A returned payment fee of $30 if you make a payment on your Line which is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason.
- A returned check fee of $30 if you write a Check that Bank dishonors under the "Advances" section of this Agreement.
- A stop payment fee of $30 for the service of stopping payment on a Check and a $30 service fee for renewal of each stop payment order.
- A foreign transaction fee of 1% of the transaction amount. This fee is not applicable to transactions in the United States.
- An early termination fee of $     **350.00**     if you close your Line within the first 36 months
- A document request fee of $6 per copy for service of providing copies. Bank will not charge you for documents Bank is required by law to give you at no charge.
- Any real estate related closing fees due at the closing of your Line as reflected on the HUD1 settlement statement provided to you by the closing agent which is hereby incorporated and made part of this Agreement by this reference.

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or overlimit fees. You also agree that Bank may also charge you a fee, not otherwise enumerated herein, for services that Bank performs for you that you have requested. The application of any fee shall not cure the default which initiated the fee.

**Security Interests.** Your Line will be secured by a mortgage (Mortgage) on your dwelling (Dwelling). If the Dwelling is your primary or secondary residence, you represent and warrant to Bank that at all times during the term of this Agreement your Dwelling, or a minimum of one unit of your multi-unit Dwelling, shall be occupied by you and shall not be used as rental property. Bank agrees to waive any security interest in the Dwelling to the extent it secures Advances which may be in excess of your Credit Line. You name Bank as loss payee and beneficiary of the proceeds of, and assign to Bank any unearned premiums of, all insurance connected with your Line. You must not adversely affect Bank's interest in the Dwelling by any action or inaction. You must keep the Dwelling in good condition, promptly pay all mortgages and other liens against the Dwelling, and promptly pay all taxes and assessments on the Dwelling. You must not sell or transfer title to the Dwelling without Bank's permission, or use the Dwelling for any illegal purpose.

**Property Insurance.** You must keep the Dwelling fully insured against loss or damage on terms that are acceptable to Bank to the extent permitted by law. You must carry flood insurance if required by federal law. You may obtain property insurance or furnish existing property insurance from anyone that is acceptable to Bank provided the insurer is authorized to do business in the state or jurisdiction where the Dwelling is located or is an eligible surplus lines carrier. You agree to furnish Bank with written evidence of such insurance, with Bank named as loss payee and proof of payment of insurance premiums. If you fail to do so, Bank may buy insurance to protect Bank's interest and add the premium cost to the unpaid balance of your Line, subject to the same finance charges as Advances against your Line. You assign to Bank the proceeds from any such insurance policies up to the unpaid balance of your Line. Bank may apply such proceeds, including any return of unearned premiums and payments for claims under such policies, to reduce the unpaid balance of your Line. You irrevocably authorize Bank as your agent and on your behalf to negotiate, settle and release any claim under your insurance and to submit insurance claims for you and to receive and sign your name to any checks or drafts or related papers obtained from insurance companies.

**Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges on your Line.

**Statements.** Bank agrees to mail or deliver to you a monthly statement for each billing cycle at the end of which there is a balance which is a debit or credit balance of more than $1 or on which a finance charge has been imposed. The balance is the sum of all outstanding Advance(s), fees, payments, other credits, other charges and debits, and finance charge(s).

7/22/2006
NHEERA2 (Rev. 06/13/2005)



ERA-MULTI-NHV2_2

**Payments.** Your payments will be due monthly. You may pay the entire unpaid balance of your Line and/or your FRL(s) at any time. You are required to pay a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment and the FRL Minimum Payment for each FRL in use.

    **a) Line Minimum Payment:** The Line Minimum Payment will equal the periodic finance charges that accrued on the outstanding Line balance during the preceding billing cycle as shown on each monthly statement (Interest Only Minimum Payment).

    **b) The FRL Minimum Payment is:** For all FRL's except the 7 year "Interest Only" FRL, the minimum payment is a fixed payment amount that is sufficient to pay off the FRL including the FRL Advance Fee, at the fixed rate applicable to that FRL calculated based on the number of monthly payments for the applicable FRL Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances." If you choose the 7 year "Interest Only" FRL option, the minimum payment is 83 payments of one penny ($.01) plus the finance charges that accrued on the outstanding FRL balance which balance includes the FRL Advance Fee, at the fixed rate applicable to that FRL (as described in the section of this Agreement called "Fixed Rate Lock Advances") during the preceding billing cycle as shown on each monthly statement followed by one payment of the outstanding balance. Any amount still owing at the end of the billing cycle prior to the billing cycle containing the final payment will be added to the final minimum payment due. Additional payments on any FRL may be made at any time but you will continue to be obligated to make the fixed payment for the FRL as long as any amount is still owing on the FRL. The amount of any reduction in principal from a payment on an FRL will become available to you on your Line once it is posted, until the end of the Draw Period. If your Draw Period is not renewed then access to the Line will not be available during the Repayment Period.

    **c) Repayment Period:** The Minimum Payment may not fully repay the principal that is outstanding by the end of the Draw Period. If your Draw Period is not renewed for an additional term, during the Repayment Period you may continue to make scheduled payments on any FRL balances outstanding at the end of the Draw Period until they are paid in full. Additionally, any amount outstanding other than an FRL will be converted to a Fixed Rate Lock without an FRL Advance fee on the last business day of your Draw Period and will be subject to then current finance charges for an FRL of equal Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances." The total amount will be required to be repaid in two hundred forty (240) equal monthly payments for balances of $10,000 or more: or one hundred twenty (120) equal monthly payments for balances of less than $10,000. Any amount still owing after two hundred thirty nine (239) billing cycles or after one hundred nineteen (119) billing cycles respectively, will be added to the final minimum payment due.

Payments will be applied in the following order: First, to each FRL on a first in-first out basis for all unpaid periodic finance charges and then to the FRL's principal balance in an amount necessary to amortize the FRL within its amortization schedule, then to all unpaid periodic finance charges on the Line, then to all Other Charges, then to the Line. For introductory and promotional offer balances, payments to the Line are applied on the basis of the lowest rate balance first to highest rate balance last. If there are no balances on the Line, overpayments are applied as a prepayment to the FRL(s) on a first in-first out basis. If there are no balances on any FRL or on the Line, overpayments are credited to the Line and returned upon request. In order to make additional partial prepayments to an FRL or to prepay an FRL in full without paying off your Line, you must contact Customer Service to make arrangements to do so.

**Stop Payment Orders.** We agree to honor a stop payment order against a Check when received from you within a reasonable time prior to payment. A stop payment order becomes effective after we have actually received the order and had a reasonable time to process it, and the order will remain in effect for thirteen months. Our acceptance of a stop payment order does not mean that the Check has not yet been paid, and we shall have no liability resulting from the payment of a Check before your stop payment order becomes effective. A stop payment order may be renewed for successive periods equal to its original period of effectiveness if we receive a renewal notice prior to the order becoming ineffective.

A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite your name and the Account number. You agree that it is current industry standard to process stop payment orders by means of computer technology. Accordingly, your failure to provide the exact identification of Account number and Check number in order to identify the Check to be stopped will result in the Check being paid if presented, and we will not be liable for such payment. Errors in your name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on your written stop payment order shall relieve us from any liability for any mistaken payment or wrongful dishonor. Any errors on our written acknowledgment to you of a stop payment order must be reported by you in writing to our Customer Service Department within 10 calendar days of the written acknowledgment date. We shall not be liable for any mistaken payment or wrongful dishonor occurring after the 10-day period, unless errors or inaccuracies are so reported to us within the 10-day period.

Before we will release a stop payment order, our Customer Service Department may require the receipt of a written request, signed by you, requesting the withdrawal of the order.

In the event we recredit the Account for a paid Check, then you hereby assign to us all rights against third parties. You or any joint account holder may order a stop payment. You agree that we will not be obligated to reimburse you immediately upon notice of alleged wrongful payment; that it is your obligation to prove the fact and amount of damage suffered; and that in no case will we be liable for more than your actual damage.

We shall not be liable for any damages unless we have failed to act in good faith and exercise ordinary care. You agree to indemnify us and hold us harmless from any and all expenses incurred or damages suffered by us in honoring a stop payment order.

To place a stop payment order, write to National City, Equity Reserve Stop Payment Department, 4661 E. Main Street, Columbus, Ohio 43251-0928.

**Termination of Line.** Bank can terminate your Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that:
- You engage in fraud or material misrepresentation in connection with your Line.
- You do not meet the repayment terms of this Agreement.
- Your action or inaction adversely affects the collateral or Bank's rights in the collateral.

To the extent permitted by 11 USC 506, Bank shall be entitled to reasonable court costs and attorneys' fees for independent counsel that Bank hires (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you). Interest after termination, whether prior to or after judgment by a court of competent jurisdiction, shall accrue upon the outstanding unpaid balance at the rate determined under this Agreement until such balance is paid in full.

**Suspension or Reduction of Credit Line.** Bank can refuse to make additional extensions of credit or reduce your Line if you breach a material obligation of this Agreement in that:
- The value of the Dwelling securing your Line declines significantly below its present appraised value for purposes of the Credit Line.
- Bank reasonably believes you will not be able to meet the repayment requirements due to a material change in your financial circumstances.
- You are in default of a material obligation under this Agreement.
- Government action prevents the Bank from imposing the annual percentage rate provided for or impairs the Bank's security interest such that the value of the interest is less than 120 percent of the Credit Line.
- A regulatory agency has notified the Bank that continued Advances would constitute an unsafe or unsound practice.
- The maximum annual percentage rate is reached.

If your Line is suspended and you have used any FRL(s) then at Bank's option Bank may terminate the FRL(s) and transfer any FRL balances to your Line.

Bank will give you written notice of any such action and conditions for reinstating your credit privileges. Bank may reinstate your credit privileges when the conditions leading to suspension are cured to Bank's satisfaction. Bank may require you to request reinstatement of credit privileges when the conditions leading to suspension or reduction of your Credit Line no longer exist. An additional title examination and other documentation may be required to reinstate your Line, and any costs associated with reinstatement will be paid by you where permitted by law.

ERA-MULT-NHV2_3

**Change In Terms.** Bank may change certain terms of this Agreement at any time by giving you 15 days prior notice:
- The index and margin used for this Line if the original index is no longer available.
- A change that you specifically agree to.
- A change that benefits you.
- An insignificant change.
- Other changes permitted by applicable law.

Any change in terms will apply to balances outstanding on the effective date of the change as well as to balances generated thereafter.

**Other Provisions.** You shall promptly notify Bank of any change in circumstances which has a substantial adverse effect on your credit. You will furnish Bank with financial statements in a form satisfactory to Bank as Bank may request from time to time. Bank may also require a title examination and/or appraisal from time to time, the cost of which will be paid by you.

If this Agreement is signed by more than one borrower, each of you may draw Checks on the Line or use the Cards, and each and every borrower is jointly and severally liable for all Advances and charges on the Line. With reasonable notice to process the request, any of you may direct Bank to not make further Advances on the Line, however, reinstatement will only be made on the joint request of all of you;.

Your rights in your Line may not be assigned. The Mortgage may not be assumed by a subsequent purchaser of the Dwelling. All fees paid to Bank are not refundable.

All of Bank's rights under this Agreement are valid to the extent permitted by applicable law. If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there.

Bank may delay exercising any of its rights under this Agreement without losing them. We may accept late payments or partial payments without losing any of our rights. If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7107. If your payment is made to any other address, we may accept the payment without losing any of our rights.

You understand that Bank is a national bank located in Ohio, and that Bank's decision to extend the Line to you was made in Ohio. Therefore, this Agreement and your use of the Line, Checks and Cards, shall be governed by and construed in accordance with (a) Federal laws and regulations including but not limited to 12 USC § 85 and (b) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles.

The annual IRS Form 1098 will be issued only to the first borrower listed on this Agreement at origination and the designation of a borrower as first cannot be changed subsequently.

At Bank's option, Bank may designate an electronic or optically imaged reproduction of this Agreement or any other document related to your Loan as an original document and if it does so, the reproduction may be relied on in full by all parties to the same extent as an original.

You can change any term of this Agreement only in a writing signed by us.

You agree that, to the extent not prohibited by applicable law, Bank shall not be liable for any damages unless Bank has failed to act in good faith and exercise ordinary care. You further agree that in no event shall Bank be liable for any consequential, indirect or special damages even if Bank has been advised of the possibility of such damages.

From time to time, we may offer you special rates for balance transfer transactions or introductory or promotional offers on your Line. If we do, we will advise you of the annual percentage rates and finance charges associated with the special rate offer, how long they will be in effect, the balances to which they will apply, and other terms of the special rate offer. Any special rate offer will be subject to the terms of the offer and this Agreement.
Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. You must include your name, address, Line (account) number and social security number.

You agree that you and Bank have an established business relationship and that, to the extent not prohibited by applicable law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited, and National City may contact you by telephone and with an automated dialing and announcing device or by fax at any telephone number you have given to us including the telephone number on your application, or by email or other form of electronic communication and we may monitor telephone calls with you to assure quality service.

In this Agreement, the term "affiliates" means current and future affiliates of Bank, including, but not limited to, the following National City Corporation subsidiaries: National City Home Loan Services, Inc., First Franklin Financial Corporation, Madison Bank and Trust Company and National City Mortgage Co.

If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.

<u>**MINIMUM INITIAL ADVANCE:**</u> If Bank is paying the third party closing costs to open your Line, an initial minimum advance of $25,000 is required.

NOTICES. The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated:

If the Dwelling is located in California: Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Dwelling is located in Colorado: If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the dwelling is located in Connecticut: Your initial Draw Period will be 9 years 10 months and cannot be renewed for additional draw periods.

If the Dwelling is located in Florida: FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON THE TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES.

If the Dwelling is located in Maryland: We elect Subtitle 9, Credit Grantor Open End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Dwelling is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Dwelling is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Dwelling is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Dwelling is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the dwelling is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement may provide for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Dwelling is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Dwelling is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

COPY RECEIVED. You agree to be legally bound to all provisions of this Agreement. You acknowledge receipt of a completed copy of this Agreement, including important information below regarding your rights to dispute billing errors ("Your Billing Rights").

RACHEL SHAMI
_____        X _____
TYPE OR PRINT NAME                              SIGNATURE 

_____        X _____
TYPE OR PRINT NAME                              SIGNATURE

_____        X _____
TYPE OR PRINT NAME                              SIGNATURE

_____        X _____
TYPE OR PRINT NAME                              SIGNATURE

Address of Dwelling:   2083 E 1ST ST BROOKLYN , New York 11223

ERA-MULTI-NHV2_5

## YOUR BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information.

- Your name and Line number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with your Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)     You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b)     The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

©2005 National City Corporation

ERA-MULTI-NHV2_6

# SIGNATURE ADDENDUM TO SECURITY INSTRUMENT

Definition: "Security Instrument." The Deed of Trust, Mortgage, Trust Deed, Deed to Secure Debt or Security Deed given to secure the debt to the Lender of the same date.

Mortgagor(s)/Borrower(s) on Security Instrument:
RACHEL SHAMI

Property Address:
2083 E 1ST ST
BROOKLYN New York 11223

Lender:        National City Bank

Lender Reference Number:  0005324352

**ADDITIONAL SIGNATURES:** By signing below, Grantor(s) / Mortgagor(s) / Trustor(s) / Settlor(s) agrees to the terms and covenants contained in the Security Instrument and in any attachments. Grantors(s) / Mortgagor(s) / Trustor(s) / Settlor(s) also acknowledges receipt of a copy of the Security Instrument.

NON-APPLICANT SPOUSE, OR NON-APPLICANT
INDIVIDUAL WITH OWNERSHIP INTEREST IN PROPERTY: ADDITIONAL BORROWERS

EZRA SHAMI                          1/3/07
_____   _____
EZRA SHAMI                 Date                                  Date

_____   _____
                           Date                                  Date

_____
                           Date

ACKNOWLEDGMENT:
STATE OF  FLORIDA               , COUNTY OF  MIAMI-DADE        )ss.
On this 3rd  day of JANUARY 2007 before me MIGUEL FLORES
a notary public, personally appeared  EZRA SHAMI
_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/here/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal:

Signature _____
Name (typed or printed): _____

My commission expires: 5/17/09

SEAL

MIGUEL FLORES
Notary Public - State of Florida
My Commission Expires May 17, 2009
Commission # DD 430774
(seal)

SIGNADD1 (4/2006)

## ALLONGE TO Line of Credit AGREEMENT

PNC ID #: 2295    P

PNC Account #: 4489618321228307

Allonge to one certain Agreement Dated on or About: <u>1/3/2007 7:00:00 AM</u>

and executed by:  <u>RACHEL SHAMI</u>
                            **Debtor(s)**

With a Credit Line Amount of **$**    <u>350000.00</u>

Debtor Address:   <u>2083 E 1ST ST,BROOKLYN,NY 11223</u>

Pay to the order of:
Without Recourse

## PNC Bank N.A., successor by merger to National City Bank

By: _Eileen M Kovach_____

**Eileen M. Kovach**
**Assistant Vice President**

Loan ID: 129843

## ALLONGE TO NOTE

This endorsement is a permanent part of the Note referenced below:

| | |
|---|---|
| Original Loan Amount: | $350,000.00 |
| Note Date: | 01/03/2007 |
| Borrower Name: | RACHEL SHAMI |
| Property Address: | 2083 E 1ST ST |
| | BROOKLYN, NY 11223 |

**PAY TO THE ORDER OF**

RCS Recovery Services, LLC

**WITHOUT RECOURSE**

**US MORTGAGE RESOLUTION, LLC**

**THOMAS D. DUNKEL**
**MANAGING MEMBER**

Loan ID: 129843

## ALLONGE TO NOTE

This endorsement is a permanent part of the Note referenced below:

Original Loan Amount: $350,000.00
Note Date: 01/03/2007
Borrower Name: RACHEL SHAMI
Property Address: 2083 E 1ST ST
BROOKLYN, NY 11223

**PAY TO THE ORDER OF**

_____

**WITHOUT RECOURSE**

**RCS RECOVERY SERVICES, LLC**

_____

**Seth A. Miller**
**Manager**

Loan ID: 129843

## ALLONGE TO NOTE

This endorsement is a permanent part of the Note referenced below:

Original Loan Amount: $350,000.00
Note Date: 01/03/2007
Borrower Name: RACHEL SHAMI
Property Address: 2083 E 1ST ST
BROOKLYN, NY 11223


**PAY TO THE ORDER OF**

**MISS JONES, LLC**

**WITHOUT RECOURSE**

20 CAP FUND I, LLC

**COREY O'BRIEN**
**MANAGING MEMBER**



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007011601925001002E6931

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 7 |
|---|---|---|
| **Document ID:** 2007011601925001 | Document Date: 01-03-2007 | Preparation Date: 01-16-2007 |

Document Type: MORTGAGE
Document Page Count: 6

| PRESENTER: | RETURN TO: |
|---|---|
| RISHUM TITLE AGENCY | NCB, CLS BRECKSVILLE |
| 1300 FLATBUSH AVENUE | LOCS, LOCATOR 7120 |
| BROOKYLN, NY 11210 | PO BOX 5570 |
| 718-434-9800 | CLEVELAND, OH 44101 |
| CTSY-2083 EAST 1ST STREET | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7104 | 511 | Entire Lot | 2083 EAST 1ST STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel____ Page_____ *or* File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| RACHEL SHAMI | NATIONAL CITY BANK |
| 2083 EATS 1ST STREET | PO BOX 5570 |
| BROOKLYN, NY 11223 | CLEVELAND, OH 44101 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 350,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 350,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,750.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 3,937.50 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 875.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 1,020.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | 01-25-2007 16:56 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 7,582.50 | | **2007000048035** | |
| Recording Fee: | $ | 67.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

When recorded return to:
    NCB, CLS BRECKSVILLE
    LOCS, LOCATOR 7120
    P.O. BOX 5570
    CLEVELAND, OH 44101

——————— State of New York ———————          ——— Space Above This Line For Recording Data ———

# CREDIT LINE MORTGAGE
(With Future Advance Clause)

**This is a Credit Line Mortgage as defined in New York Real Property Law section 281. The mortgage contemplates that Lender and Mortgagor will enter into a series of advances or advances, payments and readvances. The aggregate amount at any time outstanding will be limited as specified in this Security Instrument.**

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is      **January 3, 2007**                   .
    The parties and their addresses are:
    MORTGAGOR:    RACHEL SHAMI and

                 2083 E 1ST ST BROOKLYN, New York 11223

    [X] If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and
        acknowledgments.
    LENDER:    NATIONAL CITY BANK

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure
    the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains,
    sells, conveys and mortgages to Lender, with power of sale, the following described property:

        SEE ATTACHED EXHIBIT

    The property is located in    Kings                                      at ............................................
                                          (County)
        2083 E 1ST ST                         BROOKLYN              , New York     11223
          (Address)                             (City)                             (ZIP Code)
    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights,
    wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that
    may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
    not exceed $           350,000.00  . This limitation of amount does not include interest and other fees and charges
    validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this
    Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described
       below and all their extensions, renewals, modifications or substitutions. *(You **must** specifically identify the debt(s)
       secured and you should include the **final maturity** date of such debt(s).)*

                                         Maturity Date: 1/03/2037

    Pursuant to the terms of one or more of the note(s), contract(s), or guaranty(ies), the parties reasonably contemplate
    entering into a series of advances, payments, advances, and readvances.

**NEW YORK - CREDIT LINE MORTGAGE** (NOT FOR FNMA, FHLMC, FHA OR VA USE)                          *RS   E.S.*         *(page 1 of 4)*
Experte © 1995, 1997 Bankers Systems, Inc., St. Cloud, MN Form 0CP-REMTG-NY 5/13/2005
VMP® -C465(NY) (0506)                                       VMP Mortgage Solutions, Inc.

# SIGNATURE TITLE AGENCY & LAND SERVICES

CTSY- 2083 East 1st Street

## SCHEDULE A

### PROPERTY DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of East 1st Street, distant 153 feet 3 inches northerly from the corner formed by the intersection of the easterly side of East 1st Street and the northerly side of Avenue U;

RUNNING THENCE easterly parallel with Avenue U and part of the distance through a party wall, 100 feet:

THENCE northerly parallel with East 1st Street, 23 feet;

THENCE westerly parallel with Avenue U, 100 feet to the easterly side of East 1st Street; and

THENCE southerly along the easterly side of East 1st Street, 23 feet to the point or place of BEGINNING.

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument if those advances are made within 20 years from the date of the recording of this Security Instrument. Advances made more than 20 years after this Security Instrument was recorded are also secured, but may not be secured to the same extent as advances made within 20 years of recording. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument.

5. **MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and may reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

Experi® © 1995, 1997 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NY 5/13/2005
VMP® -C465(NY) (0506)

_R.S._  _E.S._

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

7. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

8. **DEFAULT.** Mortgagor will be in default if any of the following occur:

   **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

   **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

   **Property.** Any action or inaction by the Borrower or Mortgagor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

   **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

   At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or any time thereafter. If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder.

   The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and the Lender's security interest. These expenses are payable on demand and will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees not in excess of 15% of the unpaid debt if the loan is referred for collection to an attorney who is not a salaried employee of the Lender, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Laws means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

    Mortgagor represents, warrants and agrees that:
    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim

*(page 3 of 4)*

against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

16. **AGREEMENTS ABOUT NEW YORK LIEN LAW.** If any part of the secured debt is intended or represented to be used for improvements to the Property, Mortgagor will receive all amounts lent to Mortgagor by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law.

17. **MORTGAGE TAX.**

☒ The Property covered by this Mortgage is or will be improved by a one or two family residence or dwelling.
☐ The Property covered by this Mortgage ☐ is ☐ is not real property improved by one or more structures containing in the aggregate not more than six residential dwelling units, each with separate cooking facilities.

18. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

19. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

20. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
[Check all applicable boxes]
☐ Assignment of Leases and Rents  ☐ Other _____

21. ☐ **ADDITIONAL TERMS.**

Prepared by:
ROSE BUCCINI, National City Bank
6750 Miller Road, Brecksville, OH 44141
**DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_Rachel Shami_
(Signature) ........................... (Date)     (Signature) _Ezra Shami_ ........................... (Date)
RACHEL SHAMI

........................... ........................... ...........................
(Signature) (Date) (Signature) (Date)

**ACKNOWLEDGMENT:**
STATE OF _FLORIDA_ , COUNTY OF _MIAMI-DADE_ } ss.
(Individual) On this _3rd_ day of _JANUARY_ in the year _2007_ before me, the undersigned, personally appeared
_Rachel Shami & Ezra Shami_
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My commission expires: _5/17/09_

_[Notary signature]_
Notary Public - State of ~~New York~~ _FLAR_(?)
M.F.

SEAL
MIGUEL FLORES
Notary Public - State of Florida
My Commission Expires May 17, 2009
Commission # DD 430774

© 1995, 1997 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NY 11/13/2005

-C465(NY) (0506)

(page 4 of 4)

# SIGNATURE ADDENDUM TO SECURITY INSTRUMENT

Definition: "Security Instrument." The Deed of Trust, Mortgage, Trust Deed, Deed to Secure Debt or Security Deed given to secure the debt to the Lender of the same date.

Mortgagor(s)/Borrower(s) on Security Instrument:
RACHEL SHAMI

Property Address:
**2083 E 1ST ST**
**BROOKLYN New York 11223**

Lender:    National City Bank

Lender Reference Number: **0005324352**

**ADDITIONAL SIGNATURES:** By signing below, Grantor(s) / Mortgagor(s) / Trustor(s) / Settlor(s) agrees to the terms and covenants contained in the Security Instrument and in any attachments. Grantors(s) / Mortgagor(s) / Trustor(s) / Settlor(s) also acknowledges receipt of a copy of the Security Instrument.

NON-APPLICANT SPOUSE, OR NON-APPLICANT
INDIVIDUAL WITH OWNERSHIP INTEREST IN PROPERTY: ADDITIONAL BORROWERS

_____  1/3/07          _____
**EZRA SHAMI**              Date                          Date

_____  Date           _____  Date

_____  Date

ACKNOWLEDGMENT:
STATE OF _FLORIDA_ , COUNTY OF _MIAMI-DADE_ }ss.
On this _3rd_ day of _JANUARY 2007_ before me _Miguel Flores_
a notary public, personally appeared _EZRA SHAMI_

_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/here/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal:

Signature _____

Name (typed or printed):

My commission expires: _5/17/09_

**SEAL**

MIGUEL FLORES
Notary Public - State of Florida
My Commission Expires May 17, 2009
Commission # DD 430774
(Seal)

SIGNADD1 (4/2006)



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2017102000758001001E90E8 |

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| **Document ID: 2017102000758001** | Document Date: 04-24-2015 | Preparation Date: 10-20-2017 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| PARTNERS ABSTRACT CORP. NY<br>1025 OLD COUNTRY RD # 409<br>WESTBURY, NY 11590 | THE MARGOLIN & WEINREB LAW GROUP LLP<br>165 EILEEN WAY, SUITE 101<br>SYOSSET, NY 11791 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7104 | 511 | Entire Lot | 2083 E 1ST STREET |
| **Property Type:** | DWELLING ONLY - 1 FAMILY | | | |

### CROSS REFERENCE DATA

**CRFN:** 2007000048035

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| PNC BANK NATIONAL ASSOCIATION<br>6750 MILLER ROAD<br>BRECKSVILLE, OH 44141 | US MORTGAGE RESOLUTION LLC<br>2701 RENAISSANCE BLVD, 4TH FL<br>KING OF PRUSSIA, PA 19406 |
| ☒ Additional Parties Listed on Continuation Page | |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 10-23-2017 10:33 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 42.00 | **2017000388397** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*



2017102000758001001C9268

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

**Document ID:** 2017102000758001  Document Date: 04-24-2015  Preparation Date: 10-20-2017
Document Type: ASSIGNMENT, MORTGAGE

---

**PARTIES**

**ASSIGNOR/OLD LENDER:**
NATIONAL CITY BANK
6750 MILLER ROAD
BRECKSVILLE, OH 44141

63
18

Prepared By: Janice Smith
PNC Bank National Association, successor by merger to National City Bank
6750 Miller Road,
Brecksville, OH 44141
**RECORD & RETURN TO:**
The Margolin + Weinreb Law Group, LLP
165 Eileen Way, Suite 101
Syosset, New York 11791

Ref #xxxxx8321228307

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, **PNC Bank National Association, successor by merger to National City Bank, 6750 Miller Road Brecksville, OH 44141** ("Assignor") hereby assigns and transfers to **US Mortgage Resolution LLC, WHOSE ADDRESS IS: 2701 Renaissance Blvd, 4th FL, King of Prussia, PA 19406** ("Assignee"), without recourse, representation, warranty or guaranty, express or implied, of any kind or nature, all of Assignor's rights, title and interest in and to that certain Mortgage or Deed of Trust:

Executed by: **Rachel Shami & Ezra Shami**
Recorded on: 1/25/2007        Mortgage Amount: $ **350000.00**  Dated 1\3\2007
In the Recorder's Office of: **Kings, New York** CRFN
Instrument #: **2007000048035**    Book: **N/A**        Page(s): **N/A**
Property Address: **2083 E 1ST St, Brooklyn, NY 11223**

**This Assignment is not subject to the requirements of Section 275 of the Real Property law, because it is an assignment within the secondary mortgage market.**

Date: 4/24/2015
**PNC Bank National Association, successor by merger to National City Bank**

Signature: _____
Stephanie Kibler, Assistant Vice President

## ACKNOWLEDGMENT

STATE OF OHIO                                    )
                                                 ) SS:
COUNTY OF CUYAHOGA                               )

  On the **24th** day of **April** in the year **2015**, before me, the Undersigned, a Notary Public for the said County and State, personally appeared **Stephanie Kibler** respectively of **PNC Bank National Association, successor by merger to National City Bank.**  Personally known to me or proved to me on the basis of satisfactory evidence to be the Individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that they are **Assistant Vice President** that he/she/they executed the same in his/her/their capacity(ies),and that by his/her/their signature(s) on the instrument,the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary: _____

My Commission Expires:

Brian Fundzak, Notary Public
Residence - Medina
State Wide Jurisdiction, Ohio
My Commission Expires March 7, 2017



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2017102000758002001E90AC

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 2 |
|---|---|---|
| **Document ID: 2017102000758002** | Document Date: 08-18-2015 | Preparation Date: 10-20-2017 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| PARTNERS ABSTRACT CORP. NY<br>1025 OLD COUNTRY RD # 409<br>WESTBURY, NY 11590 | RCS RECOVERY<br>C/O RICHMOND MONROE PO BOX 458<br>KIMBERLING CITY, MO 65686 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7104 | 511 | Entire Lot | 83 E 1ST STREET |
| **Property Type:** | DWELLING ONLY - 1 FAMILY | | | |

### CROSS REFERENCE DATA

CRFN: 2007000048035

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| US MORTGAGE RESOLUTION LLC<br>150 S WARNER ROAD, SUITE 220<br>KING OF PRUSSIA, PA 19460 | RCS RECOVERY SERVICES, LLC<br>1499 WEST PALMETTO PARK ROAD, SUITE 140<br>BOCA RATON, FL 33486 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed      10-23-2017 10:33
City Register File No.(CRFN):
**2017000388398**

*Annette M Hill*

*City Register Official Signature*

Recording Requested By:
RCS RECOVERY SERVICES, LLC

When Recorded Return To:
RCS RECOVERY
C/O RICHMOND MONROE
PO BOX 458
KIMBERLING CITY, MO 65686



### CORPORATE ASSIGNMENT OF MORTGAGE

**Kings, New York  REFERENCE #: 129843  "SHAMI"**
**INVESTOR #:**
Assignment Prepared on: August 10th, 2015.

Assignor: US MORTGAGE RESOLUTION, LLC at 150 S. WARNER ROAD, SUITE 220, KING OF PRUSSIA, PA 19460.
Assignee: RCS RECOVERY SERVICES, LLC  at  1499 WEST PALMETTO PARK ROAD, SUITE 140, BOCA RATON, FL 33486.

Executed By: RACHEL SHAMI AND EZRA SHAMI  To: NATIONAL CITY BANK
Date of Mortgage: 01/03/2007 Recorded: 01/25/2007  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2007000048035 In Kings County , State of New York. *Assignment of Mortgage Dated 4/24/2015 made by pac Bank National Association successor by merger to National City Bank to US Mortgage Resolution LLC being recorded simultaneously herewith*

District/Section/Block/Lot: -7104-511

Property Address:  2083 E 1ST ST, BROOKLYN, NY  11223

   This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $350,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

US MORTGAGE RESOLUTION, LLC
On 8-18-2015

By:
THOMAS D. DUNKEL, Managing Member


STATE OF PENNSYLVANIA
COUNTY OF MONTGOMERY

   On 08/18/2015 , before me, Trevor DeHaas, a Notary Public in and for MONTGOMERY in the State of PENNSYLVANIA, personally appeared THOMAS D. DUNKEL, Managing Member, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of MONTGOMERY, State of PENNSYLVANIA.

WITNESS my hand and official seal,

Trevor DeHaas
Trevor DeHaas
Notary Expires: 04/23/2017
Montgomery, Pennsylvania
(This area for notarial seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
TREVOR DEHAAS
Notary Public
UPPER MERION TWP, MONTGOMERY COUNTY
My Commission Expires Sep 23, 2017

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. |  2017102000758003001E5091 |

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| Document ID: **2017102000758003** | Document Date: 09-22-2015 | Preparation Date: 10-20-2017 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| PARTNERS ABSTRACT CORP. NY<br>1025 OLD COUNTRY RD # 409<br>WESTBURY, NY 11590 | RCS RECOVERY<br>C/O RICHMOND MONROE PO BOX 458<br>KIMERLING CITY, MO 65686 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7104 | 511 | Entire Lot | 2083 E 1ST STREET |
| **Property Type:** | DWELLING ONLY - 1 FAMILY | | | |

## CROSS REFERENCE DATA

CRFN: 2007000048035

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| RCS RECOVERY SERVICES, LLC<br>1499 W PALMETTO PARK ROAD, SUITE 140<br>BOCA RATON, FL 33486 | 20 CAP FUND I LLC<br>4636 PARK BLVD<br>SAN DIEGO, CA 92116 |

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| NYCTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| Additional MRT: | $ | 0.00 | **CITY OF NEW YORK** | | |
| TOTAL: | $ | 0.00 | Recorded/Filed 10-23-2017 10:33 | | |
| Recording Fee: | $ | 47.00 | City Register File No.(CRFN): | | |
| Affidavit Fee: | $ | 0.00 | **2017000388399** | | |

*City Register Official Signature*

Recording Requested By:
RCS RECOVERY SERVICES, LLC

When Recorded Return To:
RCS RECOVERY
C/O RICHMOND MONROE
PO BOX 458
KIMBERLING CITY, MO 65686

**CORPORATE ASSIGNMENT OF MORTGAGE**

**Kings, New York   REFERENCE #: 129843-A   "SHAMI"**
**INVESTOR #:**
Assignment Prepared on: September 22nd, 2015.

Assignor: RCS RECOVERY SERVICES, LLC at 1499 W. PALMETTO PARK ROAD, SUITE 140, BOCA RATON, FL 33486.
Assignee: _IOCAPFUND I LLC_ 
   at _4636 Park Blvd , San Diego            CA 92116_

Executed By: RACHEL SHAMI To: NATIONAL CITY BANK
Date of Mortgage: 01/03/2007 Recorded: 01/25/2007 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2007000048035 in Kings County , State of New York.

- Assigned Wholly by NATIONAL CITY BANK TO RCS RECOVERY SERVICES, LLC  Dated: 09/17/2015 Document to be recorded concurrently herewith
_✗ see schedule annexed_

District/Section/Block/Lot: --

Property Address:  2083 E 1ST ST, BROOKLYN, NY  11223

   This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $350,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

RCS RECOVERY SERVICES, LLC
On September 22nd, 2015

By: _____
Seth A. Miller, President Of RCS Recovery Corp. As
Managing Member

STATE OF FLORIDA
COUNTY OF BROWARD

On September 22nd, 2015, before me, IRIS NEGRON, a Notary Public in and for BROWARD in the State of FLORIDA, personally appeared Seth A. Miller, President Of RCS Recovery Corp. As Managing Member, personally known to me to me or proved to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of BROWARD, State of FLORIDA.

WITNESS my hand and official seal,

_____
IRIS NEGRON
Notary Expires: 09/29/2018  #FF150396
Broward, Florida
(This area for notarial seal)

> IRIS NEGRON
> MY COMMISSION #FF150396
> EXPIRES: SEP 29, 2018
> Bonded through 1st State Insurance

SCHEDULE "A"

Hereby assigns unto the assignee, a certain Mortgage dated January 3, 2007 made by Rachel Shami and Ezra Shami to National City Bank, its successors and assigns in the principal sum of $50,000.00 and recorded on January 25, 2007 as Instrument No.: 2007000048035 in the Office of the Clerk of the County of Kings covering premises known as 2083 E. 1st Street, Brooklyn, NY 11223, which mortgage was assigned to US Mortgage Resolution LLC, by assignment dated April 24, 2015. Said assignment has been sent for recording with the Kings County Clerk. Said mortgage was further assigned to RCS Recovery Services, LLC by assignment dated August 18, 2015 which assignment will be simultaneously recorded with the within instrument.



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2017102000758004001E9024 |

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

**Document ID: 2017102000758004**  Document Date: 07-25-2017  Preparation Date: 10-20-2017
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| PARTNERS ABSTRACT CORP. NY<br>1025 OLD COUNTRY RD # 409<br>WESTBURY, NY 11590 | THE MARGOLIN & WEINREB LAW GROUP, LLP<br>165 EILEEN WAY, SUITE 101<br>SYOSSET, NY 11791 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7104 | 511 | Entire Lot | 2083 E 1ST STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

**CRFN:** 2007000048035

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| 20 CAP FUND I LLC<br>4636 PARK BLVD<br>SAN DIEGO, CA 92116 | MISS JONES LLC<br>104 SE 8TH AVENUE<br>FORT LAUDERDALE, FL 33301 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** |
| NYCTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** |
| Additional MRT: | $ | 0.00 | **CITY OF NEW YORK** |
| TOTAL: | $ | 0.00 | Recorded/Filed 10-23-2017 10:33 |
| Recording Fee: | $ | 42.00 | City Register File No.(CRFN): |
| Affidavit Fee: | $ | 0.00 | **2017000388400** |

*City Register Official Signature*

Recording Requested By:

When Recorded Return To:
The Margolw + Wanreb Law Group, LLP
165 Eileen Way, Suite 101
Syosset, New York 11791

## CORPORATE ASSIGNMENT OF MORTGAGE

Reference #: 129843 "SHAMI"
Assignment Prepared: July 24th, 2017

ASSIGNOR: 20 CAP FUND I, LLC at 4636 PARK BLVD., SAN DIEGO, CA 92116
ASSIGNEE: MISS JONES, LLC at 104 SE 8TH AVENUE, FORT LAUDERDALE, FL 33301

Executed By: RACHEL SHAMI AND EZRA SHAMI,  To: NATIONAL CITY BANK
Date of Mortgage: 01/03/2007 Recorded: 01/25/2007 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.:
2007000048035 in the County of KINGS, State of New York.

Borough: BROOKLYN  Block: 7104  LOT: 511

Property Address: 2083 E 1ST ST, BROOKLYN, NY 11223

-Assigned Wholly by PNC BANK NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL
CITY BANK to US MORTGAGE RESOLUTION, LLC
Dated: 04/24/2015 Document to be recorded concurrently herewith

-Assigned Wholly by US MORTGAGE RESOLUTION, LLC to RCS RECOVERY SERVICES, LLC
Dated: 08/18/2015 Document to be recorded concurrently herewith

-Assigned Wholly by RCS RECOVERY SERVICES, LLC to 20 CAP FUND I, LLC
Dated: 09/22/2015 Document to be recorded concurrently herewith

   This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said assignor hereby assigns unto the above-named Assignee, the said Mortgage
having an original principal sum of $350,000.00 with interest, secured thereby, and the full benefit of all the powers and
of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said
Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

20 CAP FUND I, LLC
On: 7-25-17



COREY O'BRIEN, MANAGING MEMBER

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO
On 07/25/17___, before me, OFELIA RODRIGUEZ, a Notary Public personally appeared COREY O'BRIEN,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies)
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Name: OFELIA RODRIGUEZ
My Commission Expires: 06/22/2020

OFELIA RODRIGUEZ
Commission No. 2156778
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
Commission Expires June 22, 2020

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

**2019120300517001001EB9DB**

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|

| Document ID: **2019120300517001** | Document Date: 11-07-2019 | Preparation Date: 12-03-2019 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| RICHMOND MONROE<br>82 JIM LINEGAR LANE<br>BRANSON WEST, MO 65737<br>SUPPORT@SIMPLIFILE.COM | RICHMOND MONROE GROUP INC<br>PO BOX 458<br>KIMBERLING CITY, MO 65686<br>SUPPORT@SIMPLIFILE.COM |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7104 | 511 | Entire Lot | 2083 EAST 1ST STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

**CRFN:** 2007000048035
☒ Additional Cross References on Continuation Page

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MISS JONES, LLC<br>104 SE 8TH AVE<br>FORT LAUDERDALE, FL 33301 | WINDWARD BORA LLC<br>1688 MERIDIAN AVE, 7TH FLOOR<br>MIAMI BEACH, FL 33139 |

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed   12-03-2019 15:02
City Register File No.(CRFN):
**2019000394328**

*Annette M Hill*

*City Register Official Signature*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2019120300517001001CBB5B

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

**Document ID:** 2019120300517001  **Document Date:** 11-07-2019  **Preparation Date:** 12-03-2019
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
**CRFN:** 2017000388397
**CRFN:** 2017000388398
**CRFN:** 2017000388399
**CRFN:** 2017000388400

Recording Requested By:

*Crosby Capital, LLC*

**When Recorded Return To:**
CROSBY CAPITAL, LLC/Kaleena Ogo
P.O. BOX 458
KIMBERLING CITY, MO 65686
Ref#: 0008000000000150 / 1509225670



## CORPORATE ASSIGNMENT OF MORTGAGE

NY/KINGS

Assignment Prepared on: October 31, 2019

ASSIGNOR: MISS JONES, LLC , at 104 SE 8TH AVE, FORT LAUDERDALE, FL, 33301

ASSIGNEE: WINDWARD BORA, LLC , at 1688 MERIDIAN AVE, 7TH FLOOR, MIAMI BEACH, FL, 33139

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated 1/3/2007, in the amount of $350,000.00, executed by RACHEL SHAMI to NATIONAL CITY BANK and Recorded: 1/25/2007, Instrument #: 2007000048035 in KINGS County, State of New York.

Property Address: 2083 E 1ST ST, BROOKLYN, NY, 11223
Block: 7104 / Lot: 511

Document References:
- Assignment Dated: 1/3/2007 from PNC BANK NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK to US MORTGAGE RESOLUTION LLC Recorded: 10/23/2017, Instrument #: 2017000388397
- Assignment Dated: 8/10/2015 from US MORTGAGE RESOLUTION LLC to RCS RECOVERY SERVICES LLC Recorded: 10/23/2017, Instrument #: 2017000388398
- Assignment Dated: 9/22/2015 from RCS RECOVERY SERVICES LLC to 20 CAP FUND I, LLC Recorded: 10/23/2017, Instrument #: 2017000388399
- Assignment Dated: 7/24/2017 from 20 CAP FUND I, LLC to MISS JONES, LLC Recorded: 10/23/2017, Instrument #: 2017000388400

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

MISS JONES, LLC

On: 11/7/2019

By:
Name: Brandon Ramos
Title: Vice President

STATE OF Florida
COUNTY OF Miami-Dade

On 11/7/19 , before me, Brandon Ramos , a Notary Public in and for Florida or in the State of Florida , personally appeared Brandon Ramos , MISS JONES, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Vanessa Torres

*Branden Ramos*

WITNESS my hand and official seal,

Notary Expires: Nov 20 2022 / #: GG 278465

VANESSA TORRES
Commission # GG 278465
Expires November 20, 2022
Bonded Thru Budget Notary Services

NY/KINGS



**2008112401051001002EA736**

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

### RECORDING AND ENDORSEMENT COVER PAGE   PAGE 1 OF 5

| | | |
|---|---|---|
| **Document ID:** 2008112401051001 | Document Date: 11-24-2008 | Preparation Date: 11-25-2008 |

Document Type: DEED
Document Page Count: 3

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| DAVID MAHO | DAVID MAHO |
| 265 MOUNTAINDALE ROAD | 265 MOUNTAINDALE ROAD |
| WOODRIDGE, NY  12789 | WOODRIDGE, NY  12789 |
| 845-434-1516 | 845-434-1516 |
| mahoenterprises@msn.com | mahoenterprises@msn.com |

### PROPERTY DATA

| **Borough** | **Block** | **Lot** | | **Unit** | **Address** |
|---|---|---|---|---|---|
| BROOKLYN | 7104 | 511 | Entire Lot | | 2083 EAST 1ST  STREET |

**Property Type:** 1- 2 FAM WITH ATTCH GAR &/OR VACANT LAND

### CROSS REFERENCE DATA

CRFN_____  *or*  Document ID_____  *or*  _____ Year_____ Reel___ Page_____  *or*  File Number_____

### PARTIES

| **GRANTOR/SELLER:** | **GRANTEE/BUYER:** |
|---|---|
| EZRA SHAMI | RACHEL WEISS |
| 2083 EAST 1ST STREET | 32 MARINER WAY |
| BROOKLYN, NY  11223 | MONSEY, NY  10952 |

x   Additional  Parties  Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing  Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 75.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional  MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          12-18-2008 11:59
City Register File No.(CRFN):
**2008000480603**

*Annette M Hill*

***City Register Official Signature***



**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**

2008112401051001002CA5B6

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 5 |
|---|---|

Document ID: 2008112401051001     Document Date: 11-24-2008     Preparation Date: 11-25-2008
Document Type: DEED

**PARTIES**
**GRANTOR/SELLER:**
RACHEL SHAMI
2083 EAST 1ST STREET
BROOKLYN, NY 11223

# BARGAIN AND SALE DEED WITH COVENANT AGAINST GRANTOR'S ACTS

### CAUTION: THIS AGREEMENT SHOULD BE PREPARED BY AN ATTORNEY AND REVIEWED BY ATTORNEYS FOR SELLER AND PURCHASER BEFORE SIGNING.

**THIS INDENTURE**, made the ___17th___ day of November, two thousand and eight, **between**

Ezra Shami and Rachel Shami his wife, both residing at

2083 East 1ts Street

Brooklyn, New York

party of the first part, and

Rachel Weiss, residing at

32 Marriner Way

Monsey, New York 10952

party of the second part,

**WITNESSETH**, that the party of the first part, in consideration of $1.00 dollars, lawful money of the United States, paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, Bounded and described as follows:

All that certain plot, piece or parcel of land, described as follows:

BEGINNING at a point on the easterly side of East 1st Street, distant 153 feet 3 inches northerly from the corner formed by the intersection of the Easterly side of East 1st Street and the northerly side of Avenue U; running thence easterly parallel with Avenue U and part of the distance through a party wall, 100 feet; thence northerly parallel with East 1st Street, 23 feet; thence westerly; parappel with Avenue U, 100 feet to the easterly side of East 1st Street; and T, henve southerly ajoin, the easterly side of East 1st Street, 23 feet to the point or place of Beginning. SAID premises bring known as 2083 East 1st Street.

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof,

**TOGETHER** with the appurtenances and all the estate and rights of the party of the first part in and to said premises,

**TO HAVE AND TO HOLD** the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part, covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

_____

*Ezra Shami*

_____

*Rachel Shami*

*IN PRESENCE OF:* Notary public

_____

Acknowledgment by a Person Within New York State (RPL § 309-a)

STATE OF NEW YORK )
                                    ) ss.:
COUNTY OF _Nassau_ )

On the __17th__ day of __November__ in the year _2000_ before me, the undersigned, personally appeared __Rachel Shami + Ezra Shami__ _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

SUSAN AMINOV
Notary Public - State of New York
ID No. 01AM6087252
Qualified in Queens County
My Commission Expires June 13, 20__11__



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|

2008112401051001002S69B7

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2008112401051001  Document Date: 11-24-2008  Preparation Date: 11-25-2008
Document Type: DEED

**ASSOCIATED TAX FORM ID:** 2008112400316

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

FOR CITY USE ONLY

| C1. County Code | | C2. Date Deed Recorded | Month | Day | Year |

C3. Book
OR
C5. CRFN | | | C4. Page | | | |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

# RP - 5217NYC
(Rev 11/2002)

**PROPERTY INFORMATION**

| 1. Property Location | 2083 | EAST 1ST STREET | | BROOKLYN | 11223 |
| | STREET NUMBER | STREET NAME | | BOROUGH | ZIP CODE |

| 2. Buyer Name | WEISS | | RACHEL | |
| | LAST NAME / COMPANY | | FIRST NAME | |
| | | | | |
| | LAST NAME / COMPANY | | FIRST NAME | |

3. Tax Billing Address — Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)

| | LAST NAME / COMPANY | | FIRST NAME |
| STREET NUMBER AND STREET NAME | | CITY OR TOWN | STATE | ZIP CODE |

4. Indicate the number of Assessment Roll parcels transferred on the deed | 1 | # of Parcels OR | Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

5. Deed Property Size | 50 | X | 50 | OR | | ACRES
FRONT FEET | | DEPTH

Check the boxes below as they apply:
6. Ownership Type is Condominium
7. New Construction on Vacant Land

| 8. Seller Name | SHAMI | | EZRA | |
| | LAST NAME / COMPANY | | FIRST NAME | |
| | SHAMI | | RACHEL | |
| | LAST NAME / COMPANY | | FIRST NAME | |

9. Check the box below which most accurately describes the use of the property at the time of sale:

A ✓ One Family Residential   C ☐ Residential Vacant Land   E ☐ Commercial   G ☐ Entertainment / Amusement   I ☐ Industrial
B ☐ 2 or 3 Family Residential   D ☐ Non-Residential Vacant Land   F ☐ Apartment   H ☐ Community Service   J ☐ Public Service

**SALE INFORMATION**

10. Sale Contract Date | 11 / 24 / 2008
Month Day Year

11. Date of Sale / Transfer | 11 / 24 / 2008
Month Day Year

12. Full Sale Price $ _____ 0

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  Please round to the nearest whole dollar amount.

13. Indicate the value of personal property included in the sale

14. Check one or more of these conditions as applicable to transfer:

A ☐ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below )
F ☐ Sale of Fractional or Less than Fee Interest ( Specify Below )
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
J ✓ None

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

15. Building Class | A 1 | 16. Total Assessed Value (of all parcels in transfer) | 1 , 9 , 0 5

17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )

BROOKLYN 7104 511

**CERTIFICATION**    I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**

BUYER SIGNATURE          DATE

32   Mariner Way
STREET NUMBER   STREET NAME (AFTER SALE)

Brooklyn          N.Y   10952
CITY OR TOWN       STATE   ZIP CODE

**BUYER'S ATTORNEY**

Mulvo          Divad
LAST NAME          FIRST NAME

845   434-1516
AREA CODE   TELEPHONE NUMBER

**SELLER**

SELLER SIGNATURE          DATE

2008112400316201

**CERTIFICATION**

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**

BUYER SIGNATURE _____ DATE 11/24/08

**BUYER'S ATTORNEY**

LAST NAME Maho   FIRST NAME David

STREET NUMBER 32   STREET NAME (AFTER SALE) Mariner Way

AREA CODE 845   TELEPHONE NUMBER 434-1516

**SELLER**

CITY OR TOWN Monsy   STATE NY   ZIP CODE 10952

SELLER SIGNATURE _____ DATE 11/24/08

2008112400316201

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York     )
                  ) SS.:
County of              )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 2083 EAST 1ST STREET | | |
|---|---|---|
| Street Address | | Unit/Apt. |

| BROOKLYN | New York, | 7104 | 511 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

| Ezra Shami | Rachel Weiss |
|---|---|
| Name of Grantor (Type or Print) | Name of Grantee (Type or Print) |
| Signature of Grantor | Signature of Grantee |

Sworn to before me
this 25 date of November 18, 200

Sworn to before me
this 4th date of DEC 18 008

**TIFFANY LUMSDEN**
Notary Public - State of New York
ID No. 01LU6193877
Qualified in Suffolk County
My Commission Expires September 22, 2012

AMBON WEINSTOCK
NOTARY PUBLIC
No. 01
Qualified in Queens
Commission

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2008112400316101



**The City of New York
Department of Environmental Protection
Bureau of Customer Services
59-17 Junction Boulevard
Flushing, NY 11373-5108**

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1) **Property receiving service:** BOROUGH: **BROOKLYN**   BLOCK: **7104**      LOT: **511**

(2) **Property Address:** 2083 EAST 1ST STREET, NEW YORK, NY 11223

(3) **Owner's Name:** WEISS , RACHEL

   **Additional Name:**

### Affirmation:

 Your water & sewer bills will be sent to the property address shown above.

### Customer Billing Information:

#### Please Note:

A. Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

B. Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address.** DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

### Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner: _____

Signature: _____ Date (mm/dd/yyyy) 12/4/08

Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS   REV. 8/08

2

2008112400316101